IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AMY PETERSON, an individual doing
business as Amy Peterson Art Studio,

        Plaintiff,

   v.

KELLY J. BERGGREN, an individual
also known as Kelly J. Bernal; LETTERED
AND LINED, LLC, an Oregon limited
liability company; and STUPELL
INDUSTRIES, LTD. INC., a Rhode Island
corporation,

        Defendants.

Case No. 3:25-cv-01268-AB

OPINION & ORDER

Susan L. Ford
Res Nova Law
1050 SW 6th Ave. Suite 1100
Portland, OR 97204

      Attorney for Plaintiff

1 – OPINION & ORDER

Kohel Haver
Marc Mohan
Nine Muses Law
6404 E Burnside St.
Portland, OR 97215

   Attorneys for Defendants Kelly J. Berggren and Lettered And Lined, LLC

Shawn J. Kolitch
Kolitch Romano Dascenzo Gates LLC
621 SW Morrison Street Suite 1100
Portland, OR 97205

   Attorney for Defendant Stupell Industries, Ltd. Inc.

**BAGGIO, District Judge:**

   Plaintiff Amy Peterson brings this case against Defendants Kelly J. Berggren, Lettered And Lined, LLC, and Stupell Industries, Ltd. Inc. ("Stupell"). Against Defendants Berggren and Lettered And Lined, LLC (the "L&L Defendants"), Plaintiff alleges direct copyright infringement and seeks a judgment ordering the L&L Defendants to cancel copyright registrations. First Am. Compl. ("FAC") ¶¶ 51–70, ECF No. 10. Against Defendant Stupell, Plaintiff alleges vicarious copyright infringement, contributory copyright infringement, and breach of contract. FAC ¶¶ 71–92. Defendants move to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). Def. Stupell's Mot. Dismiss ("Stupell MTD") 1, ECF No. 24; L&L Defs.' Mot. Dismiss ("L&L Defs.' MTD") 1, ECF No. 33.[1] For the following reasons, the Court denies Defendants' Motions to Dismiss.

## BACKGROUND

   Plaintiff "is an artist living and working in Pleasant Hill, California, and the sole proprietor of Amy Peterson Studio." FAC ¶ 7. Plaintiff "has been engaged in the business of

---

[1] The Court considers both motions to dismiss in this Opinion & Order because the motions address similar issues.

designing and selling wall art featuring unique animal compilation artworks since December 2017." FAC ¶ 14. Plaintiff's wall art (the "Works") consists of Bathtub Works and Laundry Works. *See* FAC ¶¶ 15, 26.

Plaintiff's Bathtub Works feature "vintage bathtub images and various animals and combinations of animals in the tub . . . ." FAC ¶ 15. Plaintiff created and began selling her Bathtub Works in December 2017. FAC ¶ 15. By April 2019, Plaintiff began selling her Bathtub Works on Society6.com and Etsy.com. FAC ¶ 16. Plaintiff also licensed her Bathtub Works to Uniek, Inc., who distributed the Bathtub Works for sale to online retailers, including "Walmart.com, wayfair.com, bedbathandbeyond.com, overstock.com, homedepot.com, and target.com," and to "major brick and mortar retailers such as HomeGoods, TJMaxx, Marshall's, HomeSense, [and] Ashley HomeStore . . . ." FAC ¶ 16.

Plaintiff's Bathtub Works have evolved. In August 2019, Plaintiff began selling her "Bathtub Works in color in her Etsy shop and on Society6.com," and by January 2020, she licensed the colored Bathtub Works to Uniek. FAC ¶ 17. In March 2020, Plaintiff launched new designs of her Bathtub Works in her Society6.com and Etsy.com shop, and by July 2020, she licensed the new designs to Uniek. FAC ¶ 19. Plaintiff has since created, sold, and licensed many new design themes, including by adding bubbles to her Bathtub Works in June 2022. FAC ¶¶ 20, 22.

In January 2020, Plaintiff "started seeing infringing copies of her Bathtub Works" on Amazon.com. FAC ¶ 18. Thereafter, by January 12, 2021, Plaintiff obtained her first copyright registration for her Bathtub Works. FAC ¶ 18. Plaintiff has since registered all her newly created Bathtub Works and currently owns 1,577 U.S. Copyright Registrations for her Bathtub Works. FAC ¶ 24.

Plaintiff's Laundry Works, alternatively, feature "animals in laundry baskets, on folded towels, on a pile of laundry, on a stack of folded sweaters, on washing machines, wearing clothes hangers, wearing socks, [and] with a laundry basket on their head . . . ." FAC ¶ 26. Plaintiff obtained copyright registrations of all her Laundry Works in April and June 2023 and began selling them on her website and Etsy shop by November 2023. FAC ¶ 26. Plaintiff currently owns 308 U.S. Copyright Registrations for her Laundry Works. FAC ¶ 27.[2]

## I.    Infringement by the L&L Defendants

In January 2022, Plaintiff "discovered six unauthorized uses" of Plaintiff's "'traditional bath' Bathtub Works" by the L&L Defendants. FAC ¶ 28. Plaintiff messaged the L&L Defendants, to which Defendant Berggren responded that the L&L Defendants' images were not infringing. FAC ¶ 29. Plaintiff then sent the L&L Defendants a cease-and-desist email. FAC ¶ 30. Defendant Berggren against responded that the L&L Defendants' images were not infringing but agreed to remove them from their "sales channels." FAC ¶ 31. In April 2023, however, Plaintiff discovered that the L&L Defendants had republished and were selling the images they had previously taken down—now with bubbles added to the tub—on their Shopify store. FAC ¶ 32. Plaintiff sent a take-down notice to Shopify, and the L&L Defendants' images with bubbles were taken down. FAC ¶ 33.

Thereafter, Plaintiff discovered numerous "unauthorized uses" of Plaintiff's Bathtub Works by the L&L Defendants. FAC ¶¶ 34–36. The L&L Defendants' images copied "the animal selection, arrangement, positioning, composition, perspective, and overall original composition" of Plaintiff's Bathtub Works. FAC ¶ 37. Plaintiff found the L&L Defendants'

---

[2] A complete list of Plaintiff's copyright registrations, including both her Bathtub Works and Laundry Works, is attached as Exhibit 1 to Plaintiff's First Amended Complaint. FAC Ex. 1, ECF No. 10-1.

images being sold by Defendant Stupell on Walmart, Wayfair, Bed Bath & Beyond, and Overstock.com, and by the L&L Defendants on their Shopify store and on third-party websites. FAC ¶¶ 34–36.

In December 2024 and June 2025, Plaintiff also discovered "unauthorized uses" of Plaintiff's Laundry Works by the L&L Defendants. FAC ¶¶ 38–39. Plaintiff found these images being sold by the L&L Defendants on Etsy and by Defendant Stupell in major online retailers, including Wayfair.com, Amazon, Lowe's, Home Depot, Walmart.com, Bed Bath & Beyond.com, and Michaels.com. FAC ¶¶ 38–39.

In total, Plaintiff has identified 175 "unauthorized copies" of Plaintiff's Works being sold by Defendants (the "Images"). FAC ¶ 40.[3] Of those 175 Images, at least 166 are sold through Defendant Stupell's network of retailers, and at least twenty-four are sold directly to consumers by the L&L Defendants on their website and Etsy shop. FAC ¶ 41.

## II.    Infringement by Defendant Stupell

In July 2020, Defendant Stupell contacted Plaintiff about licensing a selection of Plaintiff's Works. FAC ¶ 43. Plaintiff responded that some of her Works were already exclusively licensed to a different company, but that Plaintiff remained open to licensing some of her other Works to Defendant Stupell. FAC ¶¶ 44–45. Negotiations followed, but no licensing agreement was formed. FAC ¶ 45.

In October 2020, Defendant Stupell engaged another artist to create copies of some of Plaintiff's Works. FAC ¶ 46. Defendant Stupell sold these images on its own site and through retailers until Plaintiff demanded that Defendant Stupell cease and desist all sales of the images.

---

[3] A chart showing a list of the L&L Defendants' Images and Plaintiff's corresponding copyrighted Works is attached as Exhibit 2 to Plaintiff's First Amended Complaint. *See* FAC Ex. 2, ECF No. 10-2.

FAC ¶¶ 46–47. Defendant Stupell complied, and in June 2022, Plaintiff and Defendant Stupell entered into a written settlement agreement. FAC ¶ 47. Paragraph six of the settlement agreement provides:

> [Plaintiff] agrees that in the event they discover any future instance(s) of the display by any third party of any of the Accused Designs, or any other images provided to such third party by [Defendant Stupell], which [Plaintiff] considers to be unauthorized or to constitute an act of infringement of their copyright interests, [Plaintiff] will promptly notify [Defendant Stupell] of that fact. [Defendant Stupell] agrees to work in good faith to have such images taken down. If such images are promptly taken down, [Plaintiff] agrees not to pursue a claim for copyright infringement against [Defendant Stupell] or the third party. For the purposes of this Settlement Agreement and Release, a take down of the images within five (5) days of the date on which [Plaintiff] informs [Defendant Stupell] of the existence of the allegedly infringing image shall be presumed to be prompt.

FAC ¶ 87 (emphasis omitted).

At some point, Defendant Stupell entered into a licensing agreement with the L&L Defendants to distribute the L&L Defendants' Images. FAC ¶ 49. Defendant Stupell has since published the L&L Defendants' Images to its network of online retailers. FAC ¶ 50. Defendant Stupell "holds accountability to audit" the content created by Defendant Berggren and the "practical ability to stop [Defendant] Berggren from publishing" the Images through its network of retailers. FAC ¶ 50. Nonetheless, Defendant Stupell "failed to deny approval of" the Images and "profited from the L&L Defendants' infringements through mass distribution to multiple major online retailers." FAC ¶ 50.

## STANDARDS

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in

the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct . . . ." *Id*. at 679. A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## DISCUSSION

Defendants move to dismiss Plaintiff's claims for failure to state a claim. Stupell MTD 1; L&L Defs.' MTD 1. Defendants argue that Plaintiff fails to state a claim for direct copyright infringement. Stupell MTD 4; L&L Defs.' MTD 3. Specifically, Defendants argue that the L&L Defendants' Images are not substantially similar to Plaintiff's Works as a matter of law. Stupell MTD 10; L&L Defs.' MTD 3. The L&L Defendants relatedly argue that Plaintiff fails to allege facts sufficient to demonstrate access, and that the L&L Defendants' Images are prior independent creations. L&L Defs.' MTD 3. Separately, Defendant Stupell argues that because Plaintiff fails to state a claim for direct copyright infringement, Plaintiff's claims for vicarious copyright infringement, contributory copyright infringement, and breach of contract also fail. Stupell MTD 24–25.

As an initial matter, the Court finds that Plaintiff's vicarious and contributory copyright infringement claims rely on a finding of direct copyright infringement, but that Plaintiff's breach of contract claim does not. Nonetheless, the Court finds that Plaintiff plausibly alleges each of those claims against Defendant Stupell. In addition, the Court finds that Plaintiff plausibly alleges direct copyright infringement against the L&L Defendants. Because Plaintiff plausibly alleges each of her claims, the Court denies Defendants' Motions to Dismiss.

## I.    Defendant Stupell

As an initial matter, the Court addresses whether Plaintiff's claims against Defendant Stupell—vicarious copyright infringement, contributory copyright infringement, and breach of contract—"rely on a finding of copyright infringement [and] must therefore be dismissed upon a finding that Plaintiff has failed to allege a plausible claim of infringement." Stupell MTD 24. The Court finds that Plaintiff's vicarious and contributory copyright infringement claims rely on a finding of direct copyright infringement, but that Plaintiff's breach of contract claim does not. Nonetheless, the Court finds that Plaintiff plausibly alleges each of these claims against Defendant Stupell.

### A.    Vicarious and Contributory Copyright Infringement

Secondary liability for direct copyright infringement may be imposed "on a theory of contributory or vicarious infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 929–30 (2005). Secondary liability, however, "does not exist in the absence of direct infringement by a third party." *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001), *as amended*, (Apr. 3, 2001). Thus, to the extent a plaintiff fails to state a claim for direct copyright infringement, a plaintiff also fails to state a claim for vicarious and contributory copyright infringement. Here, because the Court finds that Plaintiff plausibly

alleges direct copyright infringement against the L&L Defendants, *see* Discussion, *infra* Section II, the Court addresses the remaining elements of Plaintiff's vicarious and contributory copyright infringement claims.

To state a claim for vicarious copyright infringement, a plaintiff must plausibly allege that "the defendant has (1) the right and ability to supervise the infringing conduct and (2) a direct financial interest in the infringing activity." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th Cir. 2017) (quoting *Perfect 10, Inc. v. Visa Int'l Serv., Ass'n*, 494 F.3d 788, 802 (9th Cir. 2007)). Here, Plaintiff plausibly alleges that Defendant Stupell had the right and ability to supervise the L&L Defendants' infringing conduct as licensor of the L&L Defendants' Images. FAC ¶¶ 49–50, 72. In addition, Plaintiff plausibly alleges Defendant Stupell had a direct financial interest in the L&L Defendants' infringing conduct because Defendant Stupell profited from distributing the Images to retailers. FAC ¶¶ 50, 73. Accordingly, the Court finds that Plaintiff plausibly alleges vicarious copyright infringement against Defendant Stupell.

To state a claim for contributory copyright infringement, a plaintiff must plausibly allege that the defendant knows of another's infringement and "materially contributes to" or "induces" that infringement. *Giganews, Inc.*, 847 F.3d at 670 (quoting *Visa Int'l Serv., Ass'n*, 494 F.3d at 795). Here, Plaintiff plausibly alleges that Defendant Stupell—as licensor of the L&L Defendants' Images—knew of the L&L Defendants' infringing conduct. FAC ¶¶ 49–50, 81. In addition, Plaintiff plausibly alleges that Defendant Stupell materially contributed to the L&L Defendants' infringement by failing to deny approval of the Images, and by publishing the Images to retailers, despite its responsibility to review for infringing content. FAC ¶¶ 50, 80, 82. Accordingly, the Court finds that Plaintiff plausibly alleges contributory copyright infringement against Defendant Stupell.

B.    Breach of Contract[4]

"[T]o state a claim for breach of contract, a plaintiff must, at a minimum, plead facts with sufficient particularity as to allege the existence of a contract, its relevant terms, and a breach by defendant that resulted in damage to plaintiff." *Huskey v. Or. Dep't of Corr.*, 373 Or. 270, 275, 564 P.3d 142 (2025). Here, Defendant Stupell argues that if Plaintiff fails to plausibly allege direct copyright infringement against the L&L Defendants, the Court should dismiss Plaintiff's breach of contract claim because it relies on a finding of infringement. Stupell MTD 25; Def. Stupell's Reply ISO Stupell MTD ("Stupell Reply") 6–7, ECF No. 31. Plaintiff responds that she plausibly alleges the elements of breach of contract and that her claim "is not predicated upon a finding of infringement . . . ." Pl.'s Resp. Stupell MTD ("First Resp.") 13, ECF No. 30. The Court agrees with Plaintiff.

Here, Plaintiff plausibly alleges the elements of breach of contract. Plaintiff alleges the existence of a contract, *see* FAC ¶ 87 (the settlement agreement), its relevant terms, *see* FAC ¶ 87 (paragraph 6 of the settlement agreement), Defendant Stupell's breach, FAC ¶¶ 88–91, and damages, FAC ¶ 92. Moreover, the Court finds that paragraph 6 of the settlement agreement is ambiguous as to whether Defendant Stupell's contractual obligations require direct copyright infringement. The text of paragraph 6 requires that Defendant Stupell take down images that Plaintiff "considers to be *unauthorized or* to constitute an act of infringement of their copyright interests . . . ." FAC ¶ 87 (emphasis added). The Court finds the use of the term "unauthorized"

---

[4] This Court is "obligated to consider sua sponte whether [it has] subject matter jurisdiction." *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1116 (9th Cir. 2004). The Court finds that although it does not have original jurisdiction over Plaintiff's breach of contract claim, *see* FAC ¶¶ 86–92, it has supplemental jurisdiction because Plaintiff's breach of contract claim arises from the "same operative facts" as Plaintiff's federal copyright claims, *Walker v. State*, 158 F.4th 971, 980 (9th Cir. 2025); *see also* 17 U.S.C. § 501 (setting forth a cause of action for copyright infringement).

and the conjunction "or" reasonably could mean something other than copyright infringement. *See Pac. First Bank v. New Morgan Park Corp.*, 319 Or. 342, 348, 876 P.2d 761 (1994) ("Words or terms of a contract are ambiguous when they reasonably can, in context, be given more than one meaning."). Thus, the Court finds that dismissal of Plaintiff's breach of contract claim at this stage of the proceedings is inappropriate. *See Ness & Campbell Crane, Inc. v. Kleppe*, No. 3:17-CV-01865-HZ, 2018 WL 1702049, at *4 (D. Or. Apr. 5, 2018) ("[W]hen considering a motion to dismiss, the analysis ends if the provision is ambiguous."). Accordingly, the Court declines to dismiss Plaintiff's breach of contract claim.

## II.    Copyright Infringement

"To state a claim for copyright infringement, the plaintiff must plausibly allege that she owns a valid copyright, and the defendant copied protected aspects of her work." *Biani v. Showtime Networks, Inc.*, 153 F.4th 957, 962 (9th Cir. 2025). "The second prong contains two separate components: 'copying' (or 'factual copying') and illicit copying (or 'unlawful appropriation')." *Id.* (quoting *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018), *abrogated on other grounds by, Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020) (en banc)).[5]

Here, the L&L Defendants argue that Plaintiff fails to plausibly allege factual copying. L&L Defs.' MTD 10. Alternatively, Defendant Stupell and the L&L Defendants argue that Plaintiff fails to plausibly allege unlawful appropriation. Stupell MTD 10; L&L Defs.' MTD 3. The Court addresses each component in turn and finds that Plaintiff plausibly alleges factual

---

[5] Because the parties do not dispute whether Plaintiff plausibly alleges that she owns a valid copyright, the Court does not address it in this Opinion & Order. *See* First Resp. 4 ("In their Motion, [Defendant] Stupell does not challenge [Plaintiff's] ownership of valid copyrights and, therefore, the first prong of infringement is not at issue here.").

copying and unlawful appropriation. Accordingly, the Court finds Plaintiff states a claim for direct copyright infringement against the L&L Defendants.

A.    Factual Copying

Factual copying "focuses on whether the defendant copied the plaintiff's protected work." *Biani*, 153 F.4th at 962. Proof of factual copying "is required because 'independent creation is a complete defense to copyright infringement.'" *Id.* (quoting *Skidmore*, 952 F.3d at 1064). Factual copying can be established with either direct or circumstantial evidence of copying. *See Rentmeester*, 883 F.3d at 1117. "When the plaintiff lacks direct evidence of copying, he can attempt to prove it circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." *Id.*

Here, the L&L Defendants argue that Plaintiff fails to plausibly allege factual copying for three reasons: (1) Plaintiff fails to allege that the L&L Defendants had access to Plaintiff's Works; (2) Plaintiff fails to allege probative similarity; and (3) the L&L Defendants' Images were independently created. *See* L&L Defs.' MTD 10. The Court disagrees.

i.    Access

"To show circumstantial evidence of 'access,' the plaintiff may generally either provide (a) 'evidence of a chain of events between the plaintiff's work and defendants' access to that work or' (b) 'evidence that the plaintiff's work has been widely disseminated.'" *Woodland v. Hill*, 136 F.4th 1199, 1207 (9th Cir. 2025) (citation modified) (quoting *Unicolors, Inc. v. Urb. Outfitters, Inc.*, 853 F.3d 980, 985 (9th Cir. 2017)). "[A] plaintiff must show a reasonable possibility, not merely a bare possibility, that an alleged infringer had the chance to view the protected work." *Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009).

Here, Plaintiff argues that "under both a 'wide dissemination' and 'chain of events' theory[,] there was a reasonable possibility that the L&L Defendants had an opportunity to view and copy" Plaintiff's Works. Pl.'s Resp. L&L Defs.' MTD ("Second Resp.") 9, ECF No. 38. As to the wide dissemination theory, Plaintiff argues that her Works "were widely disseminated in the U.S. wall art industry – in which both [Plaintiff] and [Defendant] Berggren participate . . . ." *Id.* As to the chain of events theory, Plaintiff argues that "by virtue of [Plaintiff's] allegations of dealings by both [Plaintiff] and [Defendant] Berggren with [Defendant] Stupell relating to the same artistic subject matter[,]" Plaintiff adequately alleges this theory. *Id.* The Court finds that Plaintiff plausibly alleges access under a wide dissemination theory.

"The evidence required to show widespread dissemination will vary from case to case." *L.A. Printex Indus., Inc. v. Aeropostale, Inc.*, 676 F.3d 841, 847 (9th Cir. 2012). "In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success and on its distribution through radio, television, and other relevant mediums." *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016). For example, in *Malibu Textiles, Inc. v. Label Lane International, Inc.*, 922 F.3d 946, 950, 954 (9th Cir. 2019), the plaintiff, an owner of copyrights for two lace designs, alleged that the defendants had access to the plaintiff's designs through the plaintiff's showrooms; the designs had been manufactured in over twenty mills whose libraries of patterns were later acquired by other mills and offered to customers; the plaintiff's customers sold products featuring the plaintiff's designs in the same domestic and international markets as the defendants; and several clothing retailers operating in the same market as the defendants sold hundreds of thousands of items featuring reproductions of the designs. Taking these allegations as true, the court held that the plaintiff plausibly alleged that the defendants had "reasonable opportunities" to view the copyrighted material. *Id.* at 954.

By contrast, in *Woodland*, the plaintiff pleaded access by alleging that the defendant, "as an Instagram user, had a reasonable possibility of viewing" the plaintiff's photos despite the plaintiff only posting twelve times and receiving "between eight and seventy-five 'likes'" per post. 136 F.4th at 1205, 1207. The court, although acknowledging that platforms like Instagram—unlike standalone websites—"actively connect content creators with content consumers[,]" held that the plaintiff's allegations were insufficient to establish access: "The mere fact that [the defendant] uses Instagram and that [the plaintiff's] photos are on Instagram raises no more than a 'bare possibility' that [the defendant] viewed [the plaintiff's] photos." *Id.* at 1207–09 (quoting *Art Attacks Ink, LLC*, 581 F.3d at 1143).

Here, the Court finds that Plaintiff's allegations are more like the plaintiff in *Malibu Textiles, Inc.* Accordingly, the Court finds that Plaintiff—through a wide dissemination theory—plausibly alleges that the L&L Defendants had reasonable opportunities to access Plaintiff's Works. First, Plaintiff alleges that her Works are widely disseminated: Plaintiff has sold her Works directly to customers on Society6.com, her own website, and her Etsy shops since as early as December 2017, FAC ¶¶ 3, 15; and Plaintiff's Works have been distributed for sale in "major online retailers" and "major brick and mortar retailers" since as early as April 2019, FAC ¶ 16. Second, Plaintiff alleges that she and the L&L Defendants participate in the same consumer market, including by selling their products on Etsy and through Walmart, Wayfair, Bed Bath & Beyond, Home Depot, and Overstock.com. *Compare* FAC ¶ 16, *with* FAC ¶¶ 34–36, 38–39. Taking these allegations as true, the Court finds that Plaintiff plausibly alleges that the L&L Defendants had "reasonable opportunities to view" Plaintiff's Works. *Malibu Textiles, Inc.*, 922 F.3d at 954. Plaintiff's allegations raise more than a "bare possibility" that the L&L Defendants

viewed Plaintiff's Works. *Woodland*, 136 F.4th at 1207 (internal quotation marks omitted). The

Court declines to dismiss Plaintiff's direct copyright infringement claim for this reason.

ii.      Probative Similarity

"'Similarities probative of copying' include similarities that are more likely attributable

to copying, rather than 'coincidence, independent creation, or prior common source.'" *Hanagami*

*v. Epic Games, Inc.*, 85 F.4th 931, 941 (9th Cir. 2023) (quoting *Skidmore*, 952 F.3d at 1064). The

plaintiff need not demonstrate "a high degree of similarity"—only "that there are 'similarities

one would not expect to arise if the two works had been created independently.'" *Id.* (quoting

*Rentmeester*, 883 F.3d at 1117). "Because the focus at this stage is whether the defendant

actually copied the plaintiff's work, *any* similarity between works may be considered so long as

it is 'probative' to this question." *Biani*, 153 F.4th at 962.

For example, in *Rentmeester*, the plaintiff photographed Michael Jordan "leaping toward

a basketball hoop with a basketball raised above his head in his left hand, as though he is

attempting to dunk the ball." 883 F.3d at 1115. The plaintiff's photo was taken on a grassy knoll

at the University of North Carolina and featured Jordan in a ballet-inspired pose. *Id.* The

defendant's photo, similarly, featured Jordan "leaping toward a basketball hoop with a basketball

held in his left hand above his head, as though he is about to dunk the ball." *Id.* at 1116. The

defendant's photo was also taken outdoors, with Jordan in a similar pose, and from a similar

angle. *Id. see also id.* at 1126 (showing the two photos). In analyzing the factual copying

component of the plaintiff's copyright infringement claim, the Ninth Circuit held that the

plaintiff plausibly alleged probative similarity. *Id.* at 1118. The court reasoned that the

defendant's "access to [the plaintiff's] photo, combined with the *obvious conceptual similarities*

between the two photos, is sufficient to create a presumption that the [defendant's] photo was the product of copying . . . ." *Id.* (emphasis added).

Here, Plaintiff argues that she plausibly alleges probative similarity because the L&L Defendants "utilized the very same animals in the very same positions in the very same types of tubs and baskets, along with the same towels, baskets, and sock accessories . . . ." Second Resp. 10. The Court agrees. In comparing Plaintiff's Works with the L&L Defendants' Images, *see* FAC Ex. 2, the Court finds there are "obvious conceptual similarities" between the images sufficient to create a presumption of copying, *Rentmeester*, 883 F.3d at 1118. Accordingly, the Court finds that Plaintiff plausibly alleges similarities probative of copying. The Court declines to dismiss Plaintiff's direct copyright infringement claim for this reason.

       iii.    Independent Creation

The L&L Defendants argue that Plaintiff's direct copyright infringement claim should be dismissed because the L&L Defendants' Images are "prior independent creations . . . ." L&L Defs.' MTD 6. Plaintiff responds that the L&L Defendants improperly rely on "unauthenticated [and] inadmissible" extrinsic evidence in support of their argument and request that the Court disregard the L&L Defendants' extrinsic evidence. Second Resp. 5. The L&L Defendants agree that the Court should not consider extrinsic evidence at this stage but nevertheless argue that Plaintiff's First Amended Complaint is deficient. L&L Defs.' Reply ISO L&L Defs.' Mot. ("L&L Defs.' Reply") 2–3, ECF No. 41. The Court agrees with the parties that it may not consider extrinsic facts on a Rule 12(b)(6) motion. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) ("Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) . . . ."). The Court

further finds that Plaintiff plausibly alleges that the L&L Defendants' Images were not prior independent creations.

As stated, proof of factual copying "by the defendant is necessary because independent creation is a complete defense to copyright infringement." *Rentmeester*, 883 F.3d at 1117. "No matter how similar the plaintiff's and the defendant's works are, if the defendant created his independently, without knowledge of or exposure to the plaintiff's work, the defendant is not liable for infringement." *Id.* Here, the Court finds that Plaintiff plausibly alleges that the L&L Defendants' Images were not prior independent creations.

First, as to Plaintiff's Bathtub Works, Plaintiff alleges she created her original Bathtub Works as early as December 2017, FAC ¶ 15; she created her colored Bathtub Works in August 2019, FAC ¶ 17; she added bubbles to her Bathtub Works in June 2022, FAC ¶ 22; and she launched new designs of her Bathtub Works from March 2020 through 2023, FAC ¶¶ 19–20. Plaintiff, comparatively, alleges she discovered the L&L Defendants' Images of her original Bathtub Works in January 2022, FAC ¶ 28; she discovered Images of her Bathtub Works with bubbles in April 2023, FAC ¶ 32; and she discovered all remaining Images of her Bathtub Works in 2023 and 2024, FAC ¶¶ 34–37. Taking these allegations as true, the Court finds that Plaintiff plausibly alleges that the L&L Defendants' Images were created after Plaintiff's Bathtub Works and are therefore not prior independent creations.

Second, as to Plaintiff's Laundry Works, Plaintiff alleges she created and obtained copyright registrations of all her Laundry Works in April and June 2023. FAC ¶ 26. Plaintiff, comparatively, alleges she discovered the L&L Defendants' Images of her Laundry Works in December 2024 and June 2025. FAC ¶¶ 38–39. Taking these allegations as true, the Court finds

that Plaintiff plausibly alleges that the L&L Defendants' Images were created after Plaintiff's

Bathtub Works and are therefore not prior independent creations.

Accordingly, because Plaintiff plausibly alleges that the L&L Defendants' Images are not

prior independent creations, the Court declines to dismiss Plaintiff's direct copyright

infringement claim.

B.    Unlawful Appropriation

Unlawful appropriation "requires proof that the defendant copied enough of the

plaintiff's protected 'expression of . . . ideas or concepts to render the two works substantially

similar.'" *Biani*, 153 F.4th at 963 (quoting *Rentmeester*, 883 F.3d at 1117). The Ninth Circuit

analyzes unlawful appropriation using an intrinsic and extrinsic test. *Id.* "The intrinsic test

requires a more holistic, subjective comparison of the works to determine whether they are

substantially similar in total concept and feel." *Id.* (quoting *Rentmeester*, 883 F.3d at 1118).

"[T]he intrinsic test is left to the fact-finder." *Id.*

The extrinsic test, on the other hand, "may be decided by the court as a matter of

law . . . ." *Rentmeester*, 883 F.3d at 1118. Under the extrinsic test, the first step is to "distinguish

between the protected and unprotected material in a plaintiff's work." *Woodland*, 136 F.4th at

1210 (quoting *Gray v. Hudson*, 28 F.4th 87, 96 (9th Cir. 2022)). Once the material is separated,

the court compares the protectable elements of the plaintiff's work to the "corresponding

elements of the defendant's work to assess similarities in the objective details of the works."

*Rentmeester*, 883 F.3d at 1118. If the protectable elements are substantially similar between the

works, the plaintiff prevails. *Id.*

Photographs, though, "are not easily 'dissected into protected and unprotected

elements.'" *Woodland*, 136 F.4th at 1210 (quoting *Rentmeester*, 883 F.3d at 1119). With

photographs, "none of the 'various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like' . . . receive 'copyright protection when viewed in isolation.'" *Hanagami*, 85 F.4th at 942 (quoting *Rentmeester*, 883 F.3d at 1119). Thus, with photographs, "[w]hat *is* protected by copyright is the photographer's selection and arrangement of the photo's otherwise unprotected elements." *Rentmeester*, 883 F.3d at 1119. "If sufficiently original, the combination of subject matter, pose, camera angle, etc., receives protection, not any of the individual elements standing alone." *Id.* And while there is no defined test "for assessing when similarity in selection and arrangement becomes substantial," the Ninth Circuit has "suggested generally that the 'selection and arrangement of elements must be similar enough that the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them.'" *Hanagami*, 85 F.4th at 943 (quoting *Rentmeester*, 883 F.3d at 1121).

Here, Defendants argue that Plaintiff's Works and the L&L Defendants' Images are not substantially similar as a matter of law. Stupell MTD 10; L&L Defs.' MTD 3. Specifically, Defendants argue that "after filtering out the unprotectable ideas, concepts, public domain content, and *scènes à faire* of Plaintiff's [W]orks, the [L&L Defendants' Images] are substantially different from Plaintiff's [Works] in essentially every objective feature." Stupell MTD 10. Plaintiff responds that copyright infringement is an inherently factual question that should not be decided on a motion to dismiss but that Plaintiff, nonetheless, has "plausibly alleged that the choices the L&L Defendants made in selecting and arranging the elements of the [Images] are substantially similar" to Plaintiff's Works. First Resp. 2, 10. The Court agrees with Plaintiff that she has plausibly alleged substantial similarity.

At the outset, the Court finds that Plaintiff's Works are entitled to broad copyright protection. *See* First Resp. 7 ("[Plaintiff's Works] should receive broad protection . . . ."). As the Ninth Circuit stated in *Rentmeester*, "the greater the range of creative choices that may be made, the broader the level of protection that will be afforded to the resulting image." 883 F.3d at 1120; *see also Hanagami*, 85 F.4th at 947–48 (collecting cases and discussing thin versus broad copyright protection). Here, there was certainly a wide range of creative choices available to Plaintiff when she created her Works—i.e., images of animals posing in bathtubs and images of animals posing with laundry. Plaintiff could have used any species of animal, any positioning of the animal, any age of the animal, any number of animals, any camera angle, or any style of bathtub, flooring, background wall, laundry basket, laundry, etc. Instead, however, Plaintiff limited her Works to front-facing images of a select number of animals either sitting in a claw-foot bathtub, posing with wicker laundry baskets, or posing with laundry generally. "These creative choices—along with the other choices [Plaintiff] made with respect to lighting, camera angle, depth of field, and selection of foreground and background elements—result[] in a photo with many non-standard elements." *Id.* at 1121. Plaintiff's Works are thus entitled to broad copyright protection.

Finding that Plaintiff's Works are entitled to broad copyright protection, the Court further finds Plaintiff plausibly alleges that the L&L Defendants' Images are substantially similar to Plaintiff's Works. The Court finds *Rentmeester* distinguishable.

As discussed above, *see* Discussion, *supra* Section II.A.ii, in *Rentmeester*, the court compared two photographs of Michael Jordan "leaping toward a basketball hoop with a basketball raised above his head in his left hand, as though he is attempting to dunk the ball." 883 F.3d at 1115; *see also id.* at 1126 (showing pictures of the photographs). In both photos,

Jordan is in a similar ballet-inspired pose, outside "without the usual trappings of a basketball court," and photographed from a similar angle. *Id.* at 1121–22. The court, however, held that these similarities were similarities in "general concepts and ideas[,]" features unprotected by copyright law. *Id.* at 1122–23; *see also id.* at 1117 ("[A] defendant incurs no liability if he copies only the 'ideas' or 'concepts' used in the plaintiff's work."). The court instead emphasized the "differences in the positions of Jordan's limbs, the backgrounds and foregrounds, the presence or lack of sun, and the position of the basketball hoop and Jordan's body in the frame." *Woodland*, 136 F.4th at 1211 (citing *Rentmeester*, 883 F.3d at 1121–22). The court held that the defendant's choices in the "selection and arrangement" of those elements "produced an image unmistakably different from [the plaintiff's] photo in material details—disparities that no ordinary observer of the two works would be disposed to overlook." *Rentmeester*, 883 F.3d at 1122.

Here, by contrast, the differences in details between the L&L Defendants' Images and Plaintiff's Works are easily overlooked. Defendant Stupell, in fact, identifies all differences in its Motion to Dismiss. *See* Stupell MTD 14–24; *see also* Stupell MTD Ex. A, ECF No. 24-1 (listing the differences between Plaintiff's Works and the L&L Defendants' Images). Defendant Stupell emphasizes the differences in species of animal, color, size, and age of the animal, pose of the animal, color of the bathtub, absence or presence of bubbles, style of background wall, style and color of floor, absence or presence of wording, shape and style of laundry basket, etc. Stupell MTD 14–24. Defendant Stupell argues these differences render the L&L Defendants' Images not substantially similar to Plaintiff's Works. *Id.* at 24. However, unlike the differences between the photographs in *Rentmeester*, here, the differences are in minor details. *See* 883 F.3d at 1121 ("Those choices produced an image that differs from [the plaintiff's] photo in *more than just minor details*." (emphasis added)). In this way, the differences are more like those in *Kevin*

*Barry Fine Art Associates v. Ken Gangbar Studio, Inc.*, 391 F. Supp. 3d 959, 968 (N.D. Cal. 2019), in which the court compared wall art containing "depiction[s] of patterns of nature." The court held that although the works contained differences in "uses of space," "slightly different colored rocks[,]" and "curvature disparities[,]" "a rational jury could find that these deviations were 'knowing modifications,' which would evidence deliberate copying, rather than independent creation." *Id.* (citing *Malibu Textiles, Inc.*, 922 F.3d at 953). Similarly, here, the differences in the L&L Defendants' Images are more indicative of deliberate copying rather than producing an image unmistakably different in material details.

Accordingly, the Court declines to find that the L&L Defendants' Images are not substantially similar to Plaintiff's Works as a matter of law. The Court instead finds that Plaintiff plausibly alleges substantial similarity and declines to dismiss Plaintiff's direct copyright infringement claim for this reason. *See Hanagami*, 85 F.4th at 945 ("[I]t is generally disfavored for copyright claims to be dismissed for lack of substantial similarity at the pleading stage. In many cases, 'application of the extrinsic test requires analytical dissection of a work and expert testimony' because most judges are not sufficiently trained in the specifics of the art form at issue to make reliable conclusions about similarity." (citation modified) (quoting *Williams v. Gaye*, 895 F.3d 1106, 1119 (9th Cir. 2018)).

///

///

///

///

///

///

22 – OPINION & ORDER

## CONCLUSION

The Court DENIES Defendant Stupell Industries, Ltd. Inc's Motion to Dismiss for

Failure to State a Claim [24] and Defendants Kelly J. Berggren and Letter And Lined, LLC's

Motion to Dismiss for Failure to State a Claim [33].

IT IS SO ORDERED.

DATED this 5th day of February, 2026.

_____
AMY M. BAGGIO
United States District Judge